IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98 HEALTH & WELFARE FUND, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98 PENSION PLAN, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98 PROFIT SHARING PLAN, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98 JOINT APPRENTICESHIP AND TRAINING PLAN, LABOR MANAGEMENT COOPERATIVE COMMITTEE, and LOCAL UNION 98 OF THE INTERNATION BROTHERHOOD OF ELECTRICAL WORKERS, <br>             **Plaintiffs,** <br><br>      **v.** <br><br> **LYNDEE CORPORATION and JAMES MACCOCIA,** <br>              **Defendants.** | CIVIL ACTION <br><br><br> NO.  25-4271 |

**MEMORANDUM**

**HODGE, J.**                                                                 **July 14, 2026**

Before the Court is Plaintiff/Counterclaim Defendant Local Union 98 of the International Brotherhood of Electrical Workers' ("Local 98") Motion for Judgment on the Pleadings (ECF No. 14), Defendant/Counterclaim Plaintiff Lyndee Corporation's ("Lyndee") opposition thereto (ECF No. 20), and Local 98's reply in support (ECF No. 21). For the reasons that follow, the Motion is

denied without prejudice, and the case is stayed pending resolution of the grievance process outlined in the collective bargaining agreement.

## I.    BACKGROUND

### A.    Factual Background[1]

Local 98 and Lyndee are parties to a Collective Bargaining Agreement ("CBA") for the period of May 1, 2023 through April 30, 2026. (ECF No. 9 at 6–11 (the "Counterclaim") ¶ 1.) The CBA is a binding and enforceable contract. (*Id.* ¶ 20, 25.) The CBA requires Local 98 employees to "install all electrical work in accordance with Municipal rules and code requirements, also the contract specifications, and in a safe and workmanlike manner." (ECF No. 9-1 at 17.) The contract provides an internal dispute resolution process, in which "[a]ll grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement." (ECF No. 9-1 at 4.) If these representatives are unable to resolve a dispute, the matter shall be referred to the Labor-Management Committee, and then, if necessary, to the Council on Industrial Relations for the Electrical Contracting Industry. (*Id.*) The contract provides for one exception to this grievance process: "any [] entity due contributions or payments hereunder" is not required to exhaust contractual remedies under the grievance process before initiating a lawsuit. (*Id.* at 12–13.)

In March of 2023, Lyndee was awarded a contract for electrical work and Local 98 workers were assigned to complete the project. (Counterclaim ¶¶ 2–4.) In its Counterclaim, Lyndee alleges that Local 98 employees did not complete the work in a "proper and workmanlike manner." (*Id.* ¶ 7.) Lyndee states that Local 98 "[i]mproperly installed conduit and wiring," and "[f]ailed to comply with Municipal rules and code requirements." (*Id.* ¶ 8.) Lyndee alleges that "[a]s a direct

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

result of the Employee's substandard and defective workmanship, Lyndee was required to incur additional labor costs and, in effect, pay for the same work twice in order to correct and complete the electrical installation." (*Id.* ¶ 11.) This caused project delays and damage to Lyndee's professional reputation. (*Id.* ¶ 10.)

### B.    Procedural History

Local 98, the International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan, the International Brotherhood of Electrical Workers Local Union No. 98 Profit Sharing Plan, International Brotherhood of Electrical Workers Local Union No. 98 Joint Apprenticeship and Training Trust Fund, and the Labor Management Cooperative Committee (collectively, "Plaintiffs") filed a Complaint on July 29, 2025, in this Court. (ECF No. 1.) Plaintiffs bring two counts under ERISA, 29 U.S.C. § 1001 *et seq.*, for delinquent contributions and breach of fiduciary duty. (*Id.* at 4–8.) On October 30, 2025, Defendants Lyndee and James Macciocca filed an Answer including a Counterclaim from Lyndee alone against Local 98 alone. (ECF No. 9.) On January 12, 2026, Local 98 filed a Motion for Partial Judgment on the Pleadings (the "Motion") regarding the claims set forth in the Counterclaim. (ECF No. 14.) Lyndee filed an opposition to the Motion. (ECF No. 20.)

Lyndee brings three claims in its Counterclaim: breach of contract—deficient performance (Count I); breach of contract—failure to exhaust remedies (Count II); and unjust enrichment, in the alternative (Count III). (*See generally* Counterclaim.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a court will grant a motion for judgment on the pleadings when there are no unresolved questions of material fact and the movant is entitled to judgment as a matter of law. "A dispute of fact is material if there is sufficient evidence for a

reasonable factfinder to find in favor of the nonmoving party." *Certain Underwriters at Lloyd's London v. Peerstar, LLC*, 649 F. Supp. 3d 73, 78 (E.D. Pa. 2023); *see also Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) ("[A Rule 12(c) motion] only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain.") (citation modified). The criteria for evaluating a motion under 12(c) are the same as those for a 12(b)(6) motion. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). Thus, in evaluating a 12(c) motion, the court must accept as true all well-pleaded factual allegations of the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Id.* at 417–18.

In evaluating a 12(c) motion, the Court may only consider information from the pleadings, attached exhibits, and public record. *Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543 (E.D. Pa. 2020). Under Federal Rule of Civil Procedure 7(a), the pleadings include the complaint, answer, and the counterclaim. *See* Fed. R. Civ. P. 7(a).

## III.   DISCUSSION

Both Local 98 and Lyndee argue that the other was required to exhaust the remedies available to it under the CBA prior to bringing claims in this Court. Specifically, Lyndee brings a claim asserting that Local 98 breached the contract by filing this lawsuit without engaging with the dispute resolution outlined in the CBA. Local 98 argues that Lyndee's counterclaims must be dismissed as a matter of law because Lyndee did not utilize the dispute resolution outlined in the CBA.

Federal courts have well-established jurisdiction over collective bargaining agreements, which preempts state law. Labor Management Relations Act, 29 U.S.C. § 185(a), (c); *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962); *Allis-Chalmers Corp. v. Lueck*, 471 U.S.

202, 211 (1985). The purpose of this federal preemption is to avoid "[t]he possibility that individual contract terms might have different meanings under state and federal law [which] would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Lucas Flour*, 369 U.S. at 103.

Although federal courts have jurisdiction over labor contract disputes, "where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987). A court can waive the internal dispute resolution requirements if it finds the process prescribed by the contract is unreasonable or likely to prove futile. *Price v. Int'l Bhd. of Teamsters*, 46 F.R.D. 18, 23 (E.D. Pa. 1969). Furthermore, if there is a factual dispute "as to whether compulsory and binding arbitration has been agreed upon, and, if so, as to what disputes have been made arbitrable," then a court may waive the requirement to exhaust internal remedies. *Lucas Flour*, 369 U.S. at 106.

The CBA states as follows:

> Section 1.06 All grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within forty-eight (48) hours, they shall refer the same to the Labor-Management Committee.

(ECF No. 1-1 at 4.)

There is no factual dispute as to whether the grievance process has been agreed upon by the parties. Although Lyndee asserts that there is a factual question of whether there is a valid agreement, its Counterclaim—which is taken as true at this stage—asserts that the CBA is valid and that the parties are obligated to comply with the dispute resolution mechanism outlined therein. (*See* Counterclaim ¶¶ 25, 27.) While Lyndee hints at certain conditions that may make the

grievance process futile, such suggestions are insufficient for this Court to waive the agreed upon process by finding it unreasonable or likely to be futile.

Because the CBA provides a grievance process, those procedures must be exhausted before this Court can address the merits.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies the Motion without prejudice and stays the case pending exhaustion of the grievance process.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**